FRANKENTHAL *et al.* v. GILBERT *et al.*

(*Circuit Court, S. D. Mississippi, W. D.* January Term, 1888.)

1. FRAUDULENT CONVEYANCES—TAKING TITLE IN WIFE'S NAME—AGREEMENT WITH CREDITORS.

   An insolvent trader sold the whole of his estate to certain of his creditors for the amount of their debts, and certain others which they assumed, the total exceeding the value of the estate. The creditors immediately took possession, and managed the business for a few days, after which one of their number bought out the others, and sold the estate to the insolvent's wife, for cash and promissory notes. She then went into possession, under her own sign, employed her husband, but without salary, with others as assistants, and eventually paid off the notes. *Held*, that although the wife was not shown to have any separate estate prior to the purchase by her, there was no fraud.

2. HUSBAND AND WIFE—LIABILITY OF WIFE'S ESTATE—DEBTS OF HUSBAND—DECLARATIONS TO COMMERCIAL AGENCY.

   In a creditors' suit against an insolvent's wife to subject property in her hands to the payment of their debts, statements of the husband as to his financial condition made at periods antecedent to his insolvency, to a commercial agency, cannot defeat the rights of the wife, unless participated in by her.

In Equity. Creditors' bill.

*Shelton & Crutcher*, for complainants.
*Miller, Smith, & Hirsch*, for defendants.

HILL, J. The bill, in substance, charges that the complainants were, before January, 1885, creditors of said Phil Gilbert; that at that time said Gilbert was the owner of two stores in the city of Vicksburg, in which were $24,000 worth of goods and merchandise, besides the one-half owner of a stock of goods at Fitler's landing, in Issaquena county; that on the 21st day of January, 1885, said Gilbert, for the expressed consideration of $8,739.45, and the agreement to pay certain taxes due by said Gilbert, and other indebtedness, amounting to the sum of $358.45, by an instrument in writing, purporting to be a bill of sale, conveyed all of said goods, and the interest of said Gilbert in the store at Fitler's landing, to Baer & Bro. and others; that on the 10th day of February thereafter said Baer & Bro., and others made a pretended sale of said stock of goods and merchandise, and the interest of said Gilbert in the stock of goods at Fitler's landing, to the defendant, Cecilia Gilbert, wife of said Phil Gilbert, for the pretended sum of about $6,000; that said Phil Gilbert remained all the time, and is still, in the possession of said stocks of goods and merchandise unsold, and is carrying on said business in the name of his wife, but in fact for his own benefit; and that said sales and transfers were made with a fraudulent purpose to defeat the complainants, and other creditors of said Phil Gilbert, in the collection of their debts, and are therefore void; and prays that the defendant be declared a trustee for the complainants, and other creditors of said Phil Gilbert, as to said stocks of goods, and their proceeds, and for a decree against said Phil Gilbert and wife for the amounts due them. The answers deny all the fraud charged in the bill, which throws the burden upon complainants to prove the same. I have considered the evidence, and from it find that the sale made to Baer & Bro. and others, on the 21st of January, 1885, was in payment of debts due these creditors, and the debts assumed by them, which amounted to more than the value of the goods and merchandise in Vicksburg. The proof also shows that the stock of merchandise in the store at Fitler's landing was not of sufficient value to pay the debts owing by that firm. I further find from the evidence that when the purchase was made by Baer & Bro. and others, on the 21st of January, the purchasers went into immediate possession, and by their agent continued to sell off the stock until the 10th of February, when the sale was made to Mrs. Gilbert by the agent for one of the creditor firms, who had before that time purchased the interest of the others at a large discount; and that Phil Gilbert had had nothing to do with the business after his sale until the purchase in the name of his wife, so that I am satisfied that the sale from Phil Gilbert to these creditors was a valid sale, and passed to them a good title, and there is no evidence that there was any fraud on their part in the sale to Mrs. Gilbert. It is contended, however, on the part of complainants, that the sale to Mrs. Gilbert was really a sale to Mr. Gilbert, and that the title was taken in her name to defraud his creditors, and to prevent them from

subjecting these goods to the payment of their debts, and this question is the only point in the case that need be considered. The proof shows that the contract of purchase was that Mrs. Gilbert was to pay $400 in cash, give her note for $2,907, indorsed by a solvent indorser, and give her 12 notes, without indorsement, for equal amounts, and falling due at the end of each month, the payment of the indorsed note to be secured by a trust deed on the stock which was consummated by the payment of the money, which Mrs. Gilbert borrowed, and the execution and delivery of the notes and trust deed, according to the contract. Mrs. Gilbert immediately went into possession of the goods, under her own sign, and by her husband, son, and daughter, and other clerks employed, has since continued the business, and, though not promptly, has paid off the notes.

It is contended for complainants that as Mrs. Gilbert is not shown to have had any means of her own with which to make the purchase, that she could not borrow the money, or buy on credit, and that Gilbert, being employed in the business without any contract for wages, the proof showing there was not any agreement for wages, or any paid, other than that he obtained his support, and the contribution to the support of his family, by his services. Our statute completely emancipates married women from all marital disabilities as to their personal rights and liabilities as though they were unmarried, enables them to borrow money, purchase property on a credit, and carry on in their own names any lawful business, and makes them liable for all their contracts, and subject to a personal judgment as though unmarried. It often happens that friends of the wife are willing to aid her in procuring the means of support for herself and family in case of the inability of her husband to do so, from any cause, to loan her money, sell on a credit, or indorse her paper, and this with the expectation that she will be aided in the management of her business by her husband, whose first duty is to provide for the support of his wife and children, including the education of his children. This may well be done without any fraud or injury to the husband's creditors, provided the husband does not reserve to himself any interest in the property, or the income of the business, beyond his own support and necessary personal expenses. There is no obligation upon his wife to support and maintain him so long as he is able, by his own labor, to support himself. Applying these rules, sanctioned by the laws of this state, I am unable to find, from the evidence, the fraud charged in the bill sufficient to declare Mrs. Gilbert to be the trustee for the creditors of her husband, as prayed for in the bill. Counsel for complainants rely very much upon statements made by Phil Gilbert to the commercial agency as to his financial condition, some time before the sale to his creditors, for the relief prayed for in the bill. While this evidence might be of weight, upon an attachment issue, as grounds therefor, it cannot defeat the rights of Mrs. Gilbert, unless participated in by her. The purchasers from Gilbert, having obtained a good title, could convey it to another, although that other knew that the sale upon the part of Gilbert was made with the design to defeat his creditors, had such been the case; but the

proof in this case fails to show such fraudulent purpose. The result is that the prayer of the bill must be denied, the bill dismissed, and the complainants decreed to pay the costs.